

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LESLIE D. SAYRE, | ) | No. SA CV 13-0866-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

I.

**PROCEEDINGS**

Plaintiff filed this action on June 7, 2013, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on July 8, 2013, and July 10, 2013.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 12, 2014, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on September 6, 1957.  [Administrative Record ("AR") at 103.]  She has a college education and past relevant work experience as a financial managing director.  [AR at 45, 98, 412.]

On September 12, 2006, plaintiff filed an application for Disability Insurance Benefits alleging that she has been unable to work since March 15, 2006.  [AR at 22, 280-82.]  After her application, which was designated a prototype case,[1] was denied, she filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 22, 103, 147.]  A hearing was held on July 30, 2008, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 44-59, 65-71.]  A medical expert ("ME") and a vocational expert ("VE") also testified.  [AR at 44, 54-65, 71-73.]  On February 24, 2009, the ALJ issued a decision concluding that plaintiff was not under a disability from March 15, 2006, through the date of the decision.  [AR at 110-17.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 187-88.]  On December 23, 2010, the Appeals Council reversed the decision and remanded the case to the ALJ for further proceedings. [AR at 119-23.]

On May 22, 2012, a second hearing was held where plaintiff, represented by counsel, appeared and testified.  [AR at 77, 91-98.]  An ME and a VE also testified.  [AR at 77-91, 97-100.]  On June 18, 2012, the ALJ issued a second decision concluding that plaintiff was not disabled from March 15, 2006, through the date of the decision.  [AR at 22-33.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 15.]  When the Appeals Council denied plaintiff's request for review on April 18, 2013, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-5]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

---

[1] A "prototype case" designates a single decision maker to make the initial determination and eliminates the reconsideration step in the administrative review process.  See 20 C.F.R. §§ 404.906(a) & 416.1406(a).

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).   When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

### IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/

/

**B.**     **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date, March 15, 2006.[2] [AR at 24.] At step two, the ALJ concluded that plaintiff has the severe impairments of variable immunodeficiency syndrome, fibromyalgia, degenerative disc disease of the cervical and lumbar spine, and osteoporosis. [Id. at 25.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[3] [AR at 28.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a).[5] [Id.] Specifically, the ALJ determined that plaintiff "can lift and carry 10 pounds occasionally and less than 10 pounds frequently; sit 8 hours in an 8 hour day; stand and walk 2 hours in an 8 hour day; and occasionally climb, stoop, balance, kneel, crouch, and crawl." [Id.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff "is capable of performing past relevant work as a financial managing director." [AR at 32.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from March 15, 2006, through the date of the decision. [AR at 23, 33.]

/

/

/

---

[2]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. [AR at 24.]

[3]   See 20 C.F.R. pt. 404, subpt. P, app. 1.

[4]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[5]   "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) & 416.967(a).

# V.

## **THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ failed to provide specific and legitimate reasons for rejecting her treating physicians' opinions; (2) the ALJ erred in giving great weight to the nonexamining physicians' opinions; (3) the ALJ erred in rejecting plaintiff's subjective symptom testimony; and (4) the ALJ failed to consider non-exertional limitations related to pain and fatigue in assessing plaintiff's RFC. [Joint Stipulation ("JS") at 3-17, 27-33, 37-42, 44-49.] As explained below, the Court agrees with plaintiff and remands for an award of benefits.

## A.    EVALUATION OF MEDICAL EVIDENCE

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of her treating physicians. [JS at 3-17, 27-28.] Additionally, plaintiff maintains that the ALJ erred in giving great weight to the opinions of the nonexamining reviewing physician and the ME. [JS at 28-33, 37.]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198. The ALJ can meet the requisite

6

specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725.  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct."  Id.

On January 24, 2007, a nonexamining physician completed a Physical RFC Assessment and opined that plaintiff was capable of sedentary work except that she could only occasionally climb stairs and ladders, balance, stoop, kneel, crouch, and crawl.  [AR at 541-45.]

Dr. Amy Teresi, an endocrinologist and internal medicine physician, treated plaintiff approximately every three months from February 2004, to April 2012.  [See AR at 428-77, 777-819, 895, 908, 1200, 1218-1301.] On May 22, 2008, Dr. Teresi completed a Chronic Fatigue Syndrome RFC Questionnaire and indicated that plaintiff's diagnoses include fibromyalgia, common variable immune deficiency, adrenal insufficiency, insulin resistance and multinodular goiter.  [AR at 895; see also AR at 901-05 (Fibromyalgia RFC Questionnaire completed by Dr. Teresi dated May 22, 2008).]  She opined that plaintiff's prognosis was fair and that she has persistent chronic symptoms of a self-reported severe impairment in short-term memory or concentration; sore throat; tender cervical or axillary lymph nodes; muscle pain; multiple joint pain without joint swelling or redness; headaches; unrefreshing sleep; and post-exertional malaise lasting more than 24 hours.  [AR at 895-96.]  Dr. Teresi also stated that plaintiff's medications, including Cymbalta, Lyrica, Ambien and Flexeril, can cause drowsiness, dizziness and nausea.  [AR at 896.] Dr. Teresi further indicated that plaintiff is not a malingerer and her symptoms are consistent with her impairments.  [Id.] Dr. Teresi opined that plaintiff's fatigue would constantly interfere with her attention and concentration during a regular workday and that plaintiff is incapable of even a low stress job because "[a]ny stress exacerbates symptoms, may require higher dose steroids, not to mention the fatigue."  [AR at 897.]  Additionally, she indicated that plaintiff can walk less than a block before needing rest, sit for 20 minutes and stand for five minutes at one time, and sit/stand/walk for less than two hours in an eight hour day.  [Id.]  Plaintiff also needs to take daily unscheduled breaks for 30 minutes at time, is able to lift and carry less than 10 pounds occasionally, can never twist or climb ladders, can rarely stoop or crouch, and can

occasionally climb stairs.  [AR at 898.] Finally, Dr. Teresi opined that plaintiff has significant limitations in doing repetitive reaching, handling or fingering, and is likely to miss more than four days of work a month due to her impairments.  [AR at 898-99.]

Dr. Teresi also provided letters dated May 21, 2008, May 5, 2009, May 23, 2011, and April 24, 2012, that all provide detailed narratives of plaintiff's impairments and symptoms.  [See AR at 908-17, 1200-05, 1350-52.]  In the letter dated April 24, 2012, Dr. Teresi indicated that plaintiff's "condition has deteriorated over the later part of 2011 and into 2012" and that plaintiff requires a "significant" upcoming surgery on her jaw as a result of a congenital defect that will be done to "eliminate the dysfunction from this defect, chronic pain and facial muscle loss[.]"  [AR at 1350.]

Dr. B. Burt Rahavi, a rheumatologist, treated plaintiff from June 2004 to February 2011, for fibromyalgia.  [See AR at 863, 866-69, 871-75, 939, 1173-89, 1336.]  In a letter dated February 9, 2011, Dr. Rahavi indicated that plaintiff was diagnosed with fibromyalgia in 2004 and that her tender points are located on her hips, neck, upper back, knees and lower back.  [AR at 939.]  He also provided that her treatment has included medication, trigger point injections and ongoing physical therapy.  [Id.]  Dr. Rahavi explained that plaintiff "continues to have difficulty with cognitive function such as memory and concentration."  [Id.]   In addition, she suffers from chronic debilitating fatigue; migraine headaches; difficultly doing detailed, repetitive movements with her hands and pain with the use of her thumbs due to osteoarthritis; and myofascial/joint pain that is exacerbated by a vitamin D deficiency.  [Id.]  Finally, Dr. Rahavi opined that:

> Problems like fibromyalgia, arthritis and fatigue ha[ve] significantly decreased [plaintiff's] ability to perform activities of daily living.  She spends a significant amount of time in bed and has been housebound for most of the last five years.  I do not see this improving in the future to allow her to return to any regular work, whether on a full-time or part-time basis.

[Id.]

Dr. Ronald Wempen, an environmental medicine specialist, treated plaintiff from March 2006 to March 2011, for chronic fatigue syndrome, immune system disorder with hypogammaglobulinemia, autoimmune thyroiditis, hypothalamic-pituitary-adrenal axis dysfunction, with definite toxic effects resulting from increased mercury levels and chronic neuro-viruses.  [See AR at 546-49, 660, 672, 686, 708, 770, 772, 931-36, 952, 984, 993, 997.]  In a letter dated March

20, 2011, Dr. Wempen noted that plaintiff is unable to exercise because she fatigues quickly and remains fatigued for over 24 hours after exertion.  [AR at 932.]  Dr. Wempen also provided a detailed history, the results of a full physical examination, and summarized laboratory findings. [AR at 931-36.]  Finally, Dr. Wempen opined that plaintiff:

> would certainly not be fit to return to her former position as a bank executive, with her difficulties performing cognitive tasks, such as concentration, comprehension and memory.  She even finds usual activities of daily living, such as shopping, carrying objects, driving herself, and managing finances to be very difficult.  [¶]  There is, unfortunately, no expectation of sufficient improvement in [plaintiff]'s condition into the foreseeable future to allow employment, either full-time or part-time; her present condition should be considered as static and stable.  It is readily conceivable that forcing [plaintiff] to work would result in sudden further deterioration, which could lead to her demise.

[AR at 936.]

On August 16, 2011, plaintiff underwent an internal medicine consultation by examining physician Dr. Azizollah Karamlou.  [AR at 1304-08.]  Dr. Karamlou reviewed "a few notes" in plaintiff's medical record, performed an examination and diagnosed plaintiff with a history of immune deficiency associated with multiple infections, a history of hypoadrenalism, Hashimoto's thyroiditis, and osteoporosis. [AR at 1304-07.] Dr. Karamlou opined that plaintiff was capable of light work except that she can only occasionally bend, kneel, and push and pull with the upper and lower extremities.  [AR at 1307-08.]

In a letter dated May 2, 2012, Dr. C. Philip O'Carroll, a neurologist, indicated he has treated plaintiff since 2000 for chronic migraine headaches, fibromyalgia, sleep disorder and cognitive issues, and is currently "the pain management specialist supervising her care." [AR at 1355.] Dr. O'Carroll explained that despite plaintiff's various treatments, including  antidepressants, pain medications, anti-inflammatory agents, anticonvulsants, Botox injections, Lidoderm patches, and physical therapy, she "continues to experience chronic diffuse body pain, arthralgia, debilitating migraine headaches, chronic fatigue, poor memory and concentration[.]"  [Id.]  Dr. O'Carroll concluded that as a result of "this extraordinary amalgam of physical problems," plaintiff "will never again be fit to return to the work force in any meaningful way."  [AR at 1356.]

In a letter dated May 11, 2012, Dr. Michael P. Weinstein, an orthopedic surgeon, indicated that he performed a laminotomy on plaintiff's L4-5 disc in 2007 that resulted in less back pain for several years. [AR at 1366.] Dr. Weinstein went on to explain, however, that "in this last year she has had irritation with the nerve in her lower back, left leg and foot and this has created problems for her in conducting her activities of daily living." [Id.] He opined that plaintiff's nerve pain in her left leg and foot is permanent and results in it going numb frequently and she gets discomfort in her back after sitting for about 15 minutes requiring her to get up and move around. [Id.] Dr. Weinstein also provided that plaintiff had to reduce "her daily cortisone medicine that she takes for Adrenal Insufficiency because she now has drug-induced osteoporosis in her spine and osteoporosis in her hips." [Id.] The reduction in cortisone medication "created significant problems with [plaintiff's] ability to deal with" her back and foot pain. [Id.] Finally, Dr. O'Carroll opined that plaintiff is totally disabled for both part-time and full-time work due to "the combination of the residual back, leg and foot pain, and Fibromyalgia[.]" [Id.]

At the hearing on May 22, 2012, the ME, an internal medicine and cardiovascular disease specialist, testified that plaintiff's severe impairments consist of degenerative disease of the lumbar and cervical spine, variable immunodeficiency syndrome and fibromyalgia. [AR at 78-81.] He concluded that plaintiff's migraine headaches are "probably not" severe because they are only "sporadically mentioned", there is no evidence of hypothyroidism, and plaintiff's adrenal insufficiency is not severe because it has been controlled with treatment. [Id.] The ME opined that plaintiff has the RFC to perform duties at "the sedentary level with occasional on all postural activities." [AR at 82.] The ME testified that his opinion that plaintiff could do sedentary work is supported by "numerous notes [from 2006 and 2007] suggesting at least sedentary capability describing treadmill exercising, shopping activities, housework, et cetera." [AR at 83-84.]

In her decision, the ALJ adopted the opinions of the nonexamining physician and the ME in assessing the severity of plaintiff's impairments and her RFC. [AR at 25-27, 29-31.] Additionally, she gave "little weight" to examining physician Dr. Karamlou's findings "to give the benefit of the doubt to [plaintiff]'s subjective allegations" and because the ME had the benefit of reviewing all of the medical records. [AR at 30.] The ALJ rejected Dr. Teresi's opinion for the

following reasons: (1) "the issue of disability is reserved to the Commissioner"; (2) the treating notes did not document such severe limitations or complaints"; (3) "Dr. Teresi stated that part of her opinions were based on [plaintiff]'s self-reported impairment"; and (4) "the treating notes are devoid of any complaints or difficulties with [plaintiff]'s upper extremities that will limit her in any performance of fingering and handling." [AR at 31 (citation omitted).]  The ALJ also rejected the opinions of Drs. Wempen, O'Carroll, Rahavi, and Weinstein on the bases that: (1) "the issue of disability is reserved to the Commissioner"; (2) "they did not provide any specific functional limitations, but rather conclusory statements"; (3) "their opinions are virtually identical and are written for the benefit of [plaintiff] for the purpose of obtaining Social Security disability benefit"; and (4) "their opinions are not well supported by the treating notes[.]"  [Id.]

Under the circumstances, none of the reasons provided by the ALJ for rejecting the opinions of Drs. Teresi, Wempen, O'Carroll, Rahavi, and Weinstein is legally sufficient and/or supported by substantial evidence.  As an initial matter, because there is no evidence in the record consistent with the opinions of the nonexamining physician and nonexamining ME that were relied upon by the ALJ [see, generally, AR at 1-1431], these opinions do not constitute substantial evidence.  See Lester, 81 F.3d at 832; Erickson v. Shalala, 9 F.3d 813, 818 n.7 (9th Cir. 1993) ("[T]he non-examining physicians' conclusion, *with nothing more*, does not constitute substantial evidence[.]") (internal quotation marks, brackets and citation omitted) (italics in original); Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (when the nonexamining opinion is contradicted by all other evidence in the record, that opinion does not constitute substantial evidence).[6]  While defendant argues that the opinion of the nonexamining physician and the ME are consistent with the examining physician's opinion [see JS at 33], the ALJ explicitly stated that he gave "little weight" to the examining physician's opinion.  [See AR at 30.]

Moreover, even assuming the opinions of the nonexamining physician and ME constituted "substantial evidence," the Social Security regulations still require deference to the treating

---

[6]   The Court also notes that the probative value of the nonexamining physician's opinion is greatly reduced by the fact that this opinion was offered in January 2007, years before many of the relevant treatment records and opinions.  [See AR at 569-70.]

1   physicians' opinions.  See 20 C.F.R. §§ 404.1527 & 416.927; Social Security Ruling ("SSR") 96-

2   2p,[7] 1996 WL 374188, at *1 ("A finding that a treating source's medical opinion is not entitled to

3   controlling weight does not mean that the opinion is rejected."); Orn v. Astrue, 495 F.3d 625, 633

4   (9th Cir. 2007) ("Even if [the examining physician's] opinion were 'substantial evidence,' §

5   404.1527 still requires deference to the treating physicians' opinions.").  Under §§ 404.1527 and

6   416.927, the Commissioner looks at the following factors in determining the weight it will give the

7   treating physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of

8   examination[,]" and (2) the "[n]ature and extent of the treatment relationship[]" between the patient

9   and the treating physician.  Id. at §§ 404.1527(c)(2)(i)-(ii) & 416.927(c)(2)(i)-(ii).  "Additional factors

10  relevant to evaluating any medical opinion, not limited to the opinion of the treating physician,

11  include the amount of relevant evidence that supports the opinion and the quality of the

12  explanation provided; the consistency of the medical opinion with the record as a whole; the

13  specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of

14  understanding a physician has of the Administration's 'disability programs and their evidentiary

15  requirements' and the degree of his or her familiarity with other information in the case record."

16  Orn, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(3)-(6)) (brackets in original).

17        Under the factors set forth in § 404.1527, it is clear that the opinion of plaintiff's treating

18  physicians should be afforded greater weight than the opinions of the nonexamining physician and

19  the ME.  For example, the treating relationship plaintiff had with Drs. Teresi, Wempen, O'Carroll,

20  Rahavi and Weinstein provides a "unique perspective" on plaintiff's condition.  See 20 C.F.R. §

21  404.1527(c)(2); Orn, 495 F.3d at 633.  In addition, the nature and extent of these physicians'

22  relationship with plaintiff adds significant weight to their opinions.  See 20 C.F.R. §

23  404.1527(c)(2)(i)-(ii); Orn, 495 F.3d at 633.  Plaintiff has been treated by Dr. O'Carroll since 2000,

24

---

25        [7]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's

26  implementing regulations and the agency's policies.  SSRs are binding on all components of the
    [Social Security Administration].  SSRs do not have the force of law.  However, because they

27  represent the Commissioner's interpretation of the agency's regulations, we give them some
    deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."

28  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1    Drs. Teresi and Rahavi since 2004, Dr. Wempen since 2006, and Dr. Weinstein since 2007. [See

2    AR at 428-77, 546-49, 660, 672, 686, 708, 770, 772, 777-819, 863, 866-69, 871-75, 895, 908,

3    931-36, 939, 952, 984, 993, 997, 1173-89, 1200, 1218-1301, 1336, 1355, 1366.]

4        The "[s]upportability" of plaintiff's treating physicians' opinions adds further weight. See 20

5    C.F.R. § 404.1527(c)(3).  When viewed in its entirety, the record provides ample support for

6    plaintiff's treating physicians' opinions.  For example, Dr. Teresi's treatment notes support her

7    opinion regarding plaintiff's functional limitations.  [See, e.g., AR at 440 (treatment note dated

8    August 2, 2006, noting plaintiff was "no better" and "exhausted/in bed most of the days"); 787

9    (treatment note dated January 8, 2007, noting plaintiff's low TSH score and symptoms of fatigue);

10   783 (treatment note dated March 17, 2008, noting an increase in plaintiff's migraine headaches,

11   chronic fatigue and a decrease in her activities of daily living); 780 (treatment note dated May 16,

12   2008, noting multiple tender points consistent with fibromyalgia with symptoms of persistent

13   fatigue); 1252-53 (treatment note dated April 22, 2009, noting that plaintiff has not been exercising

14   for three months due to fatigue, has been bedridden and has developed depression and anxiety

15   due to hopelessness over her physical impairments and lack of functioning).]  In addition, the

16   treatment notes of Drs. Wempen, O'Carroll, Rahavi and Weinstein also support their opinions

17   regarding plaintiff's diagnoses and functional limitations. [See, e.g., AR at 546-49, 660, 672, 686,

18   708, 770, 772, 952, 984, 993, 997 (Dr. Wempen's treatment notes consistently documenting

19   symptoms of fatigue, malaise, multiple fibromyalgia tender points and abnormal laboratory findings

20   including elevated mercury levels, positive Epstein Barr virus and low immunity levels); 850, 942,

21   1023, 1031, 1036, 1038-49, 1340-41, 1344, 1346 (Dr. O'Carroll's treatment notes repeatedly

22   documenting plaintiff's intractable, recurrent migraines, severe muscle spasms and pain

23   secondary to her fibromyalgia, and her treatment for these impairments including medications and

24   botox injections); 863, 866-69, 871-75, 1173-89, 1336 (Dr. Rahavi's treatment notes consistently

25   documenting fatigue, multiple fibromyalgia tender points and fibromyalgia treatments including

26   injections, physical therapy and medications, as well as symptoms of osteoarthritis in plaintiff's

27   hands and thumbs requiring injections and splints); 1366, 1425 (Dr. Weinstein's treatment notes

28   and x-ray results indicating that despite initial improvement in plaintiff's back pain after the 2007

13

surgery, by 2011 she was experiencing recurring pain in her lower back and left leg that was exacerbated by the need to reduce daily cortisone because plaintiff developed drug-induced osteoarthritis in her spine).]

In addition, the consistency of plaintiff's treating physicians' opinion with the record as a whole merits additional weight. See 20 C.F.R. § 404.1527(c)(4); Orn, 495 F.3d at 634.  Indeed, all of plaintiff's treating doctors' opinions are consistent with and supported by the opinions and treatment notes of each other.  [See, e.g., AR at 428-77, 546-49, 660, 672, 686, 708, 770, 772, 777-819, 863, 866-69, 871-75, 895, 908, 931-36, 939, 952, 984, 993, 997, 1173-89, 1200, 1218-1301, 1336, 1355, 1366.]  Finally, the specialization of Drs. Teresi, Wempen, O'Carroll, Rahavi, and Weinstein in the areas of endocrinology, environmental medicine, neurology, rheumatology, and orthopedic surgery, respectively [see AR at 828, 908, 931, 939, 942], adds further weight to their opinions which concern "medical issues related to [their] . . . area[s] of specialty."  See 20 C.F.R. §§ 404.1527(c)(2)(ii), (c)(5).

Moreover, the Court is persuaded that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of plaintiff's treating physicians.  First, the ALJ erred by rejecting plaintiff's treating physicians' opinions because "the issue of disability is reserved to the Commissioner."  [See AR at 31.]  While the ultimate determination of whether plaintiff is disabled is an issue reserved to the Commissioner, the Social Security "rules provide that [ALJs] must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."  SSR 96-5p, 1996 WL 374183, at *2.  An ALJ must consider a treating physician's opinion on the ultimate issue of disability as he would consider a treating physician's opinion, and "if controverted, [it] can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."  Reddick, 157 F.3d at 725; see SSR 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored.  The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

1      Second, the ALJ's finding that plaintiff's treating physicians' opinions were not well

2  supported by their treatment notes [see AR at 31], misstates the record and is not supported by

3  substantial evidence.  See Reddick, 157 F.3d at 722-24 (ALJ's "findings were unsupported by

4  substantial evidence based on the record as a whole" when "[i]n essence, the ALJ developed his

5  evidentiary basis by not fully accounting for the context of materials or all parts of the testimony

6  and reports [and h]is paraphrasing of record material is not entirely accurate regarding the content

7  or tone of the record."); Gallant, 753 F.2d at 1456 ("Although it is within the power of the

8  [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a

9  conclusion first, and then attempt to justify it by ignoring competent evidence in the record that

10 suggests an opposite result.") (citation omitted).  For example, as discussed above, Dr. Teresi's

11 notes repeatedly document  plaintiff's symptoms of chronic pain and fatigue resulting from her

12 diagnoses of fibromyalgia, common variable immune deficiency, migraine headaches,

13 degenerative disc disease, Hashimoto's thyroiditis with hypothyroidism, and adrenal insufficiency.[8]

14 [See AR at 428-77, 777-819, 1218-1301, 1367-1420.]  Similarly, as noted above, the opinions of

15 Drs. Wempen, O'Carroll, Rahavi and Weinstein are also supported by their treatment notes

16 repeatedly documenting symptoms and diagnoses consistent with their opinions regarding

17 plaintiff's functional limitations.  [See AR at 546-49, 660, 672, 686, 708, 770, 772, 863, 866-69,

18 871-75, 931-36, 939, 952, 984, 993, 997, 1173-89, 1336, 1355, 1366.]

19

20

21         [8]   Defendant contends that this case is similar to Rollins v. Massanari, 261 F.3d 853, 856 (9th
22  Cir. 2001), where the Ninth Circuit held that "in light of positive findings on physical examination,
    some of the physician's 'recommendations were so extreme as to be implausible and were not
23  supported by any findings made by any doctor[.]'"  [JS at 20 (quoting Rollins, 261 F.3d at 856).]
    Rollins, however, is distinguishable from the instant case because in Rollins the treating physician
24  gave contradicting opinions regarding disability, only provided a short course of conservative
    treatment, and opined extreme limitations that were implausible and unsupported by any findings
25  made by a physician.  See Rollins, 261 F.3d at 856.  In this case, on the other hand, as discussed
    above, Dr. Teresi's treatment notes span many years, consistently document plaintiff's symptoms
26  of debilitating fatigue, chronic pain, as well as her treatment including back surgery, injections,
    physical therapy and medications, and are supported by the findings of other physicians. [See AR
27  at 546-49, 660, 672, 686, 708, 770, 772, 863, 866-69, 871-75, 931-36, 939, 952, 984, 993, 997,
    1173-89, 1336, 1355, 1366.]  As a result, defendant's reliance on Rollins is misplaced.
28

1    Third, the ALJ's rejection of Dr. Teresi's opinion because "part of her opinions were based
2    on [plaintiff]'s self-reported impairment" [see AR at 31], is not supported by substantial evidence.
3    Indeed, a patient's complaints are an important diagnostic tool.  See Green-Younger v. Barnhart,
4    335 F.3d 99, 107 (2d Cir. 2003) ("The fact that [a treating physician] also relied on [plaintiff's]
5    subjective complaints hardly undermines his opinion as to her functional limitations, as '[a]
6    patient's report of complaints, or history, is an essential diagnostic tool.'") (citation omitted).
7    Moreover, there is no indication that Dr. Teresi based her opinion solely on plaintiff's subjective
8    complaints.  Rather, it appears from the record that she based her opinion on a combination of
9    factors including plaintiff's complaints, medical history, and Dr. Teresi's treatment of plaintiff since
10   2004.  See Ryan, 528 F.3d at 1198 ("An ALJ does not provide clear and convincing reasons for
11   rejecting an examining physician's opinion by questioning the credibility of the patient's complaints
12   where the doctor does not discredit those complaints and supports his ultimate opinion with his
13   own observations.").

14   Fourth, the ALJ's rejection of Dr. Teresi's opinion because "the treating notes are devoid
15   of any complaints or difficulties with [plaintiff]'s upper extremities that will limit her in any
16   performance of fingering and handling" [see AR at 31], is not supported by substantial evidence.
17   Plaintiff's well-documented diagnosis of fibromyalgia, as well as her diagnoses of drug-induced
18   osteoarthritis of the hands and cervical degenerative disc disease, could certainly impair repetitive
19   upper extremity movements.  [See, e.g., AR at 855-56, 939, 1180.]

20   Finally, the ALJ's finding that the opinions of Drs. Wempen, O'Carroll, Rahavi and
21   Weinstein "did not provide any specific functional limitations, but rather conclusory statements"
22   and are "virtually identical and are written for the benefit of" plaintiff [see AR at 31], is belied by the
23   record and not supported by substantial evidence.  Each of these physician's opinions is in
24   detailed narrative form, refers to their respective years of treatment, and includes functional
25   limitations.  [See, e.g., AR at 931-36 (Dr. Wempen's opinion providing a detailed history, results
26   of a physical examination, summary of laboratory findings, and his finding that plaintiff fatigues
27   easily); 939 (Dr. Rahavi noting that plaintiff has consistently met the diagnostic criteria for
28   fibromyalgia and has difficultly making detailed, repetitive movements of her hands); 1355-56 (Dr.

16

O'Carroll's opinion outlining plaintiff's extensive treatment history for debilitating, recurrent migraine headaches that result in extreme pain); 1366 (Dr. Weinstein's opinion explaining the evolution of plaintiff's degenerative disc disease since her surgery in 2007 and noting that recurrent pain in her lower back and left leg has created problems with daily activities).] In addition, none of the letters is identical and the ALJ fails to cite any evidence in the record to support her assertion that all of these physicians somehow colluded with plaintiff in an effort to assist her in obtaining benefits.  See Lester, 81 F.3d at 832 (explaining that in the absence of evidence of impropriety, "[t]he Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (internal quotation marks and citation omitted).

In sum, the ALJ failed to provide any specific and legitimate reasons for rejecting plaintiff's treating physicians' opinions.[9]

**B.   CREDIBILITY**

Plaintiff contends that the ALJ erred in rejecting her subjective symptom testimony.  [JS at 38-42, 44-45.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's

---

[9]   Plaintiff also contends that the ALJ erred in failing to discuss the opinions of treating specialists, Drs. Mark Reidl and Irma Rey.  [See JS at 16-17.]  It appears, however, that the ALJ did refer to these physicians' findings in her decision.  [See AR at 25, 29-30.]

testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, the ALJ did not find "affirmative evidence" of malingering [see, generally, AR at 22-33], the ALJ's reasons for rejecting a claimant's credibility must be clear and convincing. See Benton, 331 F.3d at 1040 (Where there is no evidence of malingering, the ALJ can reject claimant's testimony only by "expressing clear and convincing reasons for doing so.").  "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted); Berry, 622 F.3d at 1234 (same).  The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In an Exertional Daily Activities Questionnaire, dated February 7, 2007, plaintiff indicated that she lives alone and is able to prepare easy meals, but some days can only get prepared food because she is unable to cook. [AR at 327-29.]  She also explained that she can only walk short distances, but when she is feeling better she tries to walk for 10-30 minutes to help with joint pain. [AR at 327.]  Plaintiff also stated that she can carry light objects short distances, and can "tidy up and do minor things in between visits of [her] cleaning lady, like wash kitchen counters[.]" [AR at 328.]  According to plaintiff, she is unable to drive more than 15 minutes at a time, and is unable to do yard work or any significant household chores. [AR at 328-29.]  Finally, plaintiff provided that she needs rest periods throughout the day and is sometimes completely unable to get out of bed. [AR at 329.]

1    The next day, plaintiff completed a Function Report indicating that her impairments affect

2    her ability to lift, stand, walk, sit, talk, climb stairs, remember, complete tasks, concentrate,

3    understand, and follow instructions.  [AR at 335; see also AR at 330-34, 336-37.]  She explained

4    that her "energy is limited and inconsistent . . . [and] affects [her] walking, standing, sitting as well

5    as [her] concentration and memory."  [AR at 335.]

6    At the hearing on May 22, 2012, plaintiff testified that she usually needs to lie down about

7    80% of the day and her cognitive abilities have "severely slipped" resulting in her inability to recall

8    things she has read and remember television shows or conversations.  [AR at 94.]  She also

9    indicated that she rarely shops as she gets prepared food delivered to her home and her pain has

10   increased because she was forced to lower her cortisone dose due to drug-induced osteoarthritis.

11   [AR at 94-95.]  Plaintiff reported that she suffers 10 migraines a month, the migraines have gotten

12   worse, and she recently passed out due to one.  [AR at 95-96.]  In sum, plaintiff indicated that her

13   daily activities are severely limited, she rarely leaves the house, and has hired a house cleaner

14   and gardener to take care of all the household chores.  [AR at 96-97.]

15   In her decision, the ALJ found plaintiff's "medically determinable impairments could

16   reasonably be expected to cause the alleged symptoms" [AR at 29], which "satisfie[s] the first

17   prong of the ALJ's inquiry regarding the credibility of [plaintiff]'s complaints."  Vasquez v. Astrue,

18   572 F.3d 586, 591 (9th Cir. 2009); see also id. ("After finding that Vasquez has a back disorder

19   which is a severe impairment, the ALJ acknowledged that Vasquez's injuries could reasonably be

20   expected to produce some of the pain and other symptoms alleged.") (internal quotation marks

21   omitted, italics in original).   The ALJ went on to find, however, that plaintiff's "statements

22   concerning the intensity, persistence and limiting effects of these symptoms are not credible to the

23   extent they are inconsistent with" the assessed RFC.  [AR at 29.]

24   The ALJ concluded that plaintiff was "not fully credible due to inconsistent statements."  [AR

25   at 32.] Specifically, the ALJ found:

26           [Plaintiff] stated her sitting, walking, and standing were affected due to limited
             energy.  However, she informed Dr. Rosemarie Melchore that she can be
27           sedentary for more than 3 hours at a time watching television and light and
             moderate activities for 30 minutes on a typical day.  In addition, the treating
28           entries from Dr. Teresi noted that [plaintiff] exercises daily at home.  At the

prior hearing, [plaintiff] testified that she was bed ridden most of the time and that she can sit only 30 minutes to an hour.  [Plaintiff] also asserted that she has cognitive problem [sic].  However, at the hearings, [plaintiff] provided very detailed and articulate testimony in responses to all questions.  In spite of her claim of "no improvement" and "worsening" of her conditions, the treating notes documented that physical therapy was helping with headaches and that cymbalta was helping with the pain.  [Plaintiff] informed Dr. Faranacci that was housebound [sic] and could no longer shop or cook.  However, [plaintiff] also indicated in her Exertional Daily Activity Questionnaire that she does laundry and chores and that in June 2009, [plaintiff] was "flying to Florida" according to Dr. Teresi's treating notes.  Therefore, the undersigned finds [plaintiff] not fully credible.

[Id. (citations omitted).]

Having carefully reviewed the record, the Court finds that the ALJ's reasons for rejecting plaintiff's credibility do not constitute clear and convincing reasons and/or are not supported by substantial evidence.  Specifically, the ALJ's finding that plaintiff is "not fully credible due to inconsistent statements" [see AR at 32], mischaracterizes the record.  See Lingenfelter, 504 F.3d at 1036 (explaining that reasons for discrediting plaintiff that misstate the record "provide[] no support for the [ALJ's] credibility finding[]"); Reddick, 157 F.3d at 722-24 (ALJ's "findings were unsupported by substantial evidence based on the record as a whole" when "[i]n essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports [and h]is paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").  For example, the ALJ found that while plaintiff "stated her sitting, walking, and standing were affected due to limited energy[,] . . . she informed Dr. Rosemarie Melchore that she can be sedentary for more than 3 hours at a time watching television and light and moderate activities for 30 minutes on a typical day."  [AR at 32 (citation omitted).]  However, the ability to sustain 30 minutes of "light and moderate" activity does not contradict plaintiff's statement that her ability to sit, stand and walk are affected by her fatigue.  In fact, plaintiff testified that she is able to perform light tasks for a limited period, but that she spends most of the day resting and is sometimes unable to get out of bed at all.  [AR at 66-70, 93-97.]

Moreover, the ALJ found that "treating entries from Dr. Teresi noted that [plaintiff] exercises daily at home[,]" but plaintiff testified that "she can sit only 30 minutes to an hour."  [AR at 32

(citations omitted).]  Yet, the October 1, 2008, treatment note referenced by the ALJ stating that plaintiff exercises regularly also documents that she continues to have headaches, has had an increase in hip pain, is not feeling well, and has pain and swelling in the hands.  [AR at 1271.] Further, a subsequent treatment note from Dr. Teresi in May 2009 provides that plaintiff has not exercised in the previous three months due to increased fatigue and has been mostly bedridden. [AR at 1252.]

In addition, the ALJ stated that plaintiff's assertion of cognitive problems was inconsistent with her "very detailed and articulate testimony in response to all questions."  [AR at 32.]  Plaintiff testified, however, that her cognitive problems make it difficult for her to recall things she has read and remember television shows and conversations.  [AR at 94.]  Thus, plaintiff's allegations of cognitive problems are not inconsistent with her ability at the hearing to respond to questions about her medical condition and symptoms as these are things experienced by plaintiff on a regular basis and not something she learned and must recall.

The ALJ also provided that while plaintiff testified to "'no improvement' and 'worsening' of her conditions," this statement is contradicted by treating notes documenting that "physical therapy was helping with headaches and cymbalta was helping with pain."  [AR at 32 (citations omitted).] The dates of the two notes referred to by the ALJ, however, are September 5, 2006, and June 11, 2008, respectively.  [See AR at 32 (ALJ citing AR at 434, 1273.]  Thus, plaintiff's subsequent testimony in July 2008 and May 2012 that her condition worsened over time is not contradicted by earlier notes indicating mild improvement.  In any event, while the September 5, 2006, note states that Cymbalta is helping with pain, it also states that overall plaintiff does not feel better and has had no increase in energy.  [AR at 434.]  Also, although the June 11, 2008, note provides that physical therapy has helped reduce her headaches, it also states that she still experiences headaches regularly.  [AR at 1273.]

Finally, the ALJ found that plaintiff's statement to Dr. Faranacci that she was housebound and could no longer shop or cook was inconsistent with her statement in her exertion questionnaire that "she does laundry and chores" and a treatment note in June 2009 that she "was 'flying to Florida'".  [AR at 32 (citations omitted).] The date of plaintiff''s statement to Dr. Faranacci,

however, is May 4, 2008, and she completed her exertion questionnaire over a year earlier in February 2007.  [Compare AR at 329 with AR at 919.]  Thus, it is entirely reasonable that plaintiff was able to do laundry and chores in early 2007, but worsened to the point where she could no longer do these tasks in May 2008.  Moreover, a reading of the entire exertion questionnaire indicates that plaintiff reported very limited daily activities even in February 2007.  For example, plaintiff stated that she can do chores on the days she feels better, but there are also days that the fatigue and pain are so severe that she is completely unable to get out of bed.  [AR at 327-29.]  In addition, the full note from Dr. Teresi regarding plaintiff traveling to Florida reveals that she made the trip only because her mother had just died.  [AR at 1245.]  Subsequent notes indicate that the trip was physically draining on plaintiff and upon her return she had to spend days in bed.  [AR at 1236.]

In sum, when read in context, it is clear that plaintiff's subjective allegations have not been inconsistent.  Accordingly, the ALJ's rejection of plaintiff's credibility is not supported by substantial evidence.

## VI.

## REMAND FOR AWARD OF BENEFITS

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."  Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  Where substantial evidence does not support the Commissioner's decision, the Court may reverse and remand for payment of benefits.  See id.  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Specifically:

> the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

1    Id.  Where these criteria are met, "remanding for further administrative proceedings would serve

2    no useful purpose and would unnecessarily extend [plaintiff's] long wait for benefits."  Id. at 595.

3           Under the circumstances, the Court is persuaded that "remanding for further administrative

4    proceedings would serve no useful purpose and would unnecessarily extend [plaintiff's] long wait

5    for benefits."  Benecke, 379 F.3d at 595.  First, because the ALJ did not provide specific and

6    legitimate reasons for her rejection of plaintiff's treating physicians' opinions, see supra at § V(A),

7    the Court credits the opinions of Drs. Teresi, Wempen, O'Carroll, Rahavi and Weinstein as a

8    matter of law.  See Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006) ("Because the ALJ

9    failed to provide adequate reasons for rejecting [the examining physician]'s opinion, we credit it

10   as a matter of law."); Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (crediting, as a

11   matter of law, improperly rejected treating physician opinions); see also Pitzer v. Sullivan, 908 F.2d

12   502, 506 (9th Cir. 1990) (remanding for payment of benefits where the Commissioner did not

13   provide adequate reasons for disregarding examining physician's opinion).  Second, because the

14   ALJ failed to provide clear and convincing reasons and/or substantial evidence for discounting

15   plaintiff's credibility, see supra at § V(B), plaintiff's testimony shall be credited as true.  See Lester,

16   81 F.3d at 834 (holding that when an ALJ improperly rejects a claimant's testimony regarding his

17   limitations, and the claimant would be disabled if his testimony were credited, the testimony must

18   be credited as a matter of law).

19          Moreover, Dr. Teresi opined that plaintiff's impairments would cause her to be absent from

20   work more than four days a month.  [AR at 899.]  Thus, even without direct VE testimony relating

21   to plaintiff's limitations, it is clear that crediting Dr. Teresi's opinion renders plaintiff disabled.[10]

22   See, e.g., Watson v. Barnhart, 2003 WL 21838474, at *1 (N.D. Cal. Aug. 1, 2003), aff'd, 126

23   F.App'x 788 (9th Cir. 2005) (testimony by VE that claimant "could not work in any gainful

24

_____

25          [10]   The VE did testify that if plaintiff were off task 20% of the time and missed two days of work
     a month there would be no work she could do.  [AR at 100.]  Although these are not the precise
26   limitations opined by Dr. Teresi, as the Ninth Circuit stated in Benecke, "[r]equiring remand for
     further proceedings any time the [VE] did not answer a hypothetical question addressing the
27   precise limitations established by improperly discredited testimony would contribute to waste and
     delay and would provide no incentive to the ALJ to fulfill her obligation to develop the record."  379
28   F.3d at 595.

1    employment if she had to miss more than three days of work a month"); Wright v. Astrue, 2009

2    WL 2827576, at *8 (D. Or. Aug. 24, 2009) (testimony by VE that plaintiff "could not perform

3    competitive employment if she had to miss more than two days of work a month on a routine

4    basis[]"); Harsh v. McMahon, 2007 WL 675494, at *3 (D. Kan. Feb. 26, 2007) (testimony by VE

5    that "missing two or three or more work days a month would preclude any kind of work activity[]").

6          In short, because it is clear from the record that crediting the opinions of plaintiff's treating

7    physicians and plaintiff's testimony would result in a finding that plaintiff is precluded from

8    engaging in substantial gainful activity, the Court sees no need to return the case to the

9    Commissioner to make another determination as to whether plaintiff's treating physicians' opinions

10    and plaintiff's credibility should be credited or rejected.  "Allowing the Commissioner to decide the

11    issue again would create an unfair 'heads we win; tails, let's play again' system of disability

12    benefits adjudication."  Benecke, 379 F.3d at 595.  Plaintiff has already waited nearly eight years

13    for a disability determination.  [See AR at 22, 280-82]; see also Benecke, 379 F.3d at 595

14    ("Remanding a disability claim for further proceedings can delay much needed income for

15    claimants who are unable to work and are entitled to benefits, often subjecting them to

16    tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on

17    remand.") (internal quotation marks and citation omitted).  Accordingly, a remand for the payment

18    of benefits is warranted regardless of whether the ALJ might have (on remand) articulated a valid

19    justification for rejecting plaintiff's treating physicians' opinions or her credibility.  See Varney v.

20    Sec'y of Health and Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988) ("Certainly there may

21    exist valid grounds on which to discredit a claimant's pain testimony[.] . . . But if grounds for such

22    a finding exist, it is both reasonable and desirable to require the ALJ to articulate them in the

23    original decision.") (emphasis added) (internal citation omitted).[11]

24    /

25    /

26    /

27

28        [11]  In light of the Court's decision, it is unnecessary to reach plaintiff's remaining contention that the ALJ failed to properly consider her nonexertional limitations.  [See JS at 45-49.]

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request that the final decision of the Commissioner be vacated is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for the award of benefits.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 1, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE